UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

JOSEPH MELINO,

                        Plaintiff,

                                                9:06-CV-1173
v.                                              (GTS/DRH)

STATE OF NEW YORK DEPARTMENT OF
CORRECTIONS; STATE OF NEW YORK DIVISION
OF PAROLE; PAULETTE MILLER; PAUL
CUSHMAN; FRANCIS CARUSO; WILLIAM
MURPHY; SERGEANT REALE; LOYCE DUKE;
WILLIAM TOTTEN; JOHN GARGANO; ISRAEL
RIVERA; DONALD SELSKY; LUCIEN LECLAIRE;
GLENN GOORD; RICHARD ROY; DEBRA JOY;
and PHILIP ABITABLE,

                        Defendants.
───────────────────────────────────────────

APPEARANCES:                            OF COUNSEL:

LAW OFFICE OF ANTHONY J. COLLELUORI     ANTHONY J. COLLELUORI, ESQ.
   Counsel for Plaintiff                DIANE C. PETILLO, ESQ.
180 Froehlich Farm Boulevard
Woodbury, NY 11797

HON. ANDREW M. CUOMO                    CHRISTOPHER W. HALL, ESQ.
   Attorney General for the State of New York    Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

Currently pending in this prisoner civil rights action is a motion for summary judgment

filed by the fifteen above-captioned Defendants ("Defendants").  (Dkt. No. 32.)  For the reasons

set forth below, Defendants' motion is granted in part and denied in part.

I.    **RELEVANT BACKGROUND**

A.    **Plaintiff's Claims**

Generally, in his Amended Complaint, Plaintiff alleges that Defendants violated his constitutional rights by threatening him, issuing him false misbehavior reports, conducting two separate Tier III hearings that did not comply with Department of Corrections ("DOCS") polices and procedures, and wrongfully sentencing him to placement in a Special Housing Unit ("SHU") on two separate occasions.  (Dkt. No. 8.)  Based on these allegations, Plaintiff asserts the following nine claims: (1) violation of his Fifth and Fourteenth Amendment Equal Protection rights; (2) violation of his Fifth and Fourteenth Amendment Due Process rights; (3) retaliation in violation of his First Amendment rights;[1] (4) conspiracy to violate these rights; (5) supervisory liability for failure to protect Plaintiff against the constitutional violations that he experienced; (6) malicious prosecution; (7) malicious abuse of process; (8) intentional infliction of emotional distress; and (9) violation of his Eighth Amendment rights.[2]  (*Id.*)

---

[1]    The Court liberally construes Plaintiff's Amended Complaint as asserting a claim for retaliation given that the Amended Complaint (1) expressly invokes the First Amendment, (2) alleges that Plaintiff requested that Defendant Miller not oversee his work release application, and that Plaintiff then received a "false misbehavior report" within two days of his request, and (3) alleges that, after Plaintiff filed seven grievances against four of the named-Defendants, including Defendant Cushman (who presided over Plaintiff's September 27, 2004 Tier III hearing) between September 16, 2004 and September 23, 2004, he was subsequently sentenced to seventy-five days confinement in SHU on September 27, 2004.  The Court notes that all claims must be liberally construed so as to do justice (*see* Fed. R. Civ. P. 8[e]), particularly civil rights claims.

[2]    The Court also liberally construes Plaintiff's Amended Complaint as asserting a claim for violation of his Eighth Amendment rights given that the Amended Complaint (1) expressly and repeatedly invokes the Eighth Amendment, and (2) alleges that Plaintiff experienced "weight loss and weakness" during his 106-day confinement in SHU because he had a stomach "condition" that was adversely impacted by his commissary restrictions and eating restrictions (i.e., handcuffing during eating).  (Dkt. No. 8, ¶¶ 90, 131, 132, "Jurisdiction"

**B.    Summary of Defendants' Motion**

In their motion for summary judgment,[3] Defendants argue that summary judgment is warranted for the following eight reasons: (1) Plaintiff has failed to state a claim for denial of due process at either disciplinary hearing; (2) he has failed to state a claim for violation of his equal protection rights; (3) he has failed to state a claim for conspiracy; (4) his claims against DOCS and the New York State Division of Parole are barred by the Eleventh Amendment; (5) he has failed to state a claim for supervisory liability; (6) he has failed to state a claim for malicious prosecution and abuse of process; (7) his claim of intentional infliction of emotional distress is barred by Section 24 of the Correction Law (regarding DOCS employees) and Section 259-q of the Executive Law (regarding Parole employees); and (8) Defendants are protected from liability on all claims, as a matter of law, by the doctrine of qualified immunity.

**C.    Undisputed Material Facts**

Familiarity with the undisputed material facts of this action, as well as the disputed material facts, as set forth in Defendants' Rule 7.1 Statement and Plaintiff's Rule 7.1 Response, is assumed in this Decision and Order, which is intended primarily for review by the parties.

---

Section, & "Prayer for Relief" Section, ¶¶ [a],[b].)

[3]    Although it is submitted as a "motion for summary judgment" under Fed. R. Civ. P. 56, Defendants' motion incorporates both arguments that Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and arguments that Plaintiff has failed to introduce sufficient record evidence to create a genuine issue of material fact with regard to certain claims.  (*See generally* Dkt. No. 32, Part 24, at 4-27 [Defs.' Memo. of Law].)  In a summary judgment motion, arguments that the plaintiff has failed to state a claim upon which relief may be granted "are entirely permissible under Fed. R. Civ. P. 56, and the issues presented by such arguments are purely legal in nature and in no way evidentiary in nature (all material facts alleged in Plaintiff's Amended Complaint being accepted as true, and all reasonable inferences construed in Plaintiff's favor)."  *Pilgrim v. Bruce*, 05-CV-0198, 2008 WL 2003792, at *6 (N.D.N.Y. May 7, 2008) (Sharpe, J.) (citations omitted).

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing Motions for Summary Judgment

For the sake of brevity, the Court will not recite the well-known legal standard governing motions for summary judgment in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Standard Governing Motions to Dismiss

To the extent that a defendant's motion for summary judgment under Fed. R. Civ. P. 56 is based entirely on the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.).  In such cases, a trial judge deciding a motion for summary judgment may, where appropriate, dismiss for failure to state a claim.  *Wade*, 2009 WL 3629674, at *3 (citations omitted).  For the sake of brevity, the Court will not recite the well-known legal standard governing motions to dismiss for failure to state a claim in this Decision and Order, but will direct the reader to the Court's recent decision in *Green v. Greene*, 07-CV-0351, 2009 WL 2424353, at *2-3 (N.D.N.Y. Aug. 5, 2009) (Suddaby, J.), which accurately recites that legal standard.

## III.    ANALYSIS

### A.    Due Process Claims

Based on the pleadings and subsequent papers submitted by the parties, it appears that Plaintiff is alleging that his due process rights were violated on the following four separate

occasions: (1) during his first Tier III disciplinary hearing at Hudson Correctional Facility ("Hudson"); (2) during his second Tier III disciplinary hearing at Hudson; (3) when he was denied work release; and (4) during the delay that occurred between the time he was eligible for release from DOCS and the time that he was actually released.

Defendants argue that all of Plaintiff's due process claims should be dismissed for failure to state a claim upon which relief may be granted. In the alternative, Defendants argue that summary judgment is warranted on all of Plaintiff's due process claims because he has failed to adduce sufficient record evidence from which a rational fact-finder could conclude that Plaintiff's due process rights were violated.

####        1.        Due Process Claim Related to Delay Between When Plaintiff Was Eligible for Release from DOCS and When He Was Actually Released

In the context of due process claims related to parole, a prisoner does not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (explaining that the New York parole system does not "create[ ] in any prisoner a legitimate expectancy of release"). Stated differently, "[a] convicted person has no constitutional right to be conditionally released before the expiration of a valid sentence, and decisions by the state parole board are discretionary." *Parker v. City of New York*, 05-CV-1803, 2008 WL 110904, at *11 (S.D.N.Y. Jan. 7, 2008) (citing *Greenholtz*, 442 U.S. at 7). Rather, "[a]n inmate's federally-protected liberty interest in parole release is 'limited to not being denied parole for arbitrary or impermissible reasons.'" *Parker*, 2008 WL 110904, at *11 (quoting *Brown v. Thomas*, 02-CV-9257, 2003 WL 941940, at *1 [S.D.N.Y. Mar. 10, 2003] [citing *Meachum v. Fano*, 427 U.S. 215, 226 [1976]).

For this reason, and for the reasons stated in Defendants' memorandum of law in support

of their motion for summary judgment, the Court finds that Plaintiff's Amended Complaint has

failed to state a due process claim relating to the delay that occurred between the time he was

eligible for release from DOCS and the time that he was actually released.  As a result, the Court

grants Defendants' motion with regard to this claim, and dismisses this claim without prejudice.[4]

### 2.    Due Process Claim Related to Plaintiff's Denial of Work Release

In the context of due process claims related to work release, "while revocation of work

release has been held to implicate due process concerns, access to work release in the first place

has not[; therefore], denial of work release has been held not to infringe upon a liberty interest."

*Romer v. Morgenthau*, 119 F. Supp.2d 346, 358 (S.D.N.Y. 2000) (citations omitted).   For this

reason, and for the reasons stated in Defendants' memorandum of law in support of their motion

for summary judgment, the Court finds that Plaintiff's Amended Complaint has failed to state a

due process claim relating to his denial of work release.  As a result, the Court grants

Defendants' motion with regard to this claim, and dismisses this claim without prejudice.

### 3.    Due Process Claims Related to Plaintiff's Disciplinary Hearings

In the context of disciplinary hearings, "[d]ue process requires that [they] be impartial."

*Farid v. Goord*, 200 F. Supp.2d 220, 243 (W.D.N.Y. 2002) (citing *Russell v. Selsky*, 35 F.3d 55,

59 [2d Cir. 1994]) (other citation omitted).  "However, the level of impartiality required of

---

[4]    Because the Court finds that the pleading defects in this claim are substantive,
rather than merely formal in nature, and because Defendants have already answered Plaintiff's
Amended Complaint and the deadlines for filing motions to amend have long-since expired (*see*
Dkt. No. 20, at 2), the Court dismisses this claim (and various of Plaintiff's other claims) without
prejudice and, more importantly, without first *sua sponte* affording him thirty days to further
amend that claim.

prison officials conducting disciplinary proceedings does not rise to the level of impartiality required of judges generally." *Farid*, 200 F. Supp.2d at 243 (citing *Francis v. Coughlin*, 891 F.2d 43, 46 [2d Cir. 1989]). "Even so, an inmate must be given an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense." *Id*. (citing *Walpole v. Hill*, 472 U.S. 445, 454 [1985]). "An impartial hearing officer 'is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen.'" *Id*. (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 [2d Cir. 1990]).

After carefully reviewing Plaintiff's Amended Complaint, the Court finds that he has stated a viable due process claim related to his disciplinary hearings. Moreover, after carefully reviewing the parties' arguments and record evidence on Defendants' motion, the Court finds that Plaintiff has adduced sufficient record evidence from which a rational fact-finder could conclude that neither Defendant Duke nor Defendant Cushman were impartial hearing officers.

More specifically, Plaintiff has introduced the following record evidence in support of his due process claim against Defendants Duke and Cushman: (1) Defendant Duke presided over Plaintiff's first Tier III hearing even though Duke was made aware by Defendant Abitable of his "concerns about [Plaintiff] coming to Hudson because [of] some prior relationship between them" (Dkt. No. 44, Part 4, at 20),[5] and Duke and Defendant Joy recommended to Abitable that he meet with Plaintiff prior to his being initiated for work release (*id*. at 21-26); (2) although

---

[5]        The Court notes that Defendant Abitable and Defendant Duke did not work in the same building, and therefore the initial conversation between Defendant Abitable and Defendant Duke regarding Defendant Abitable's concerns took place over the phone. (Dkt. No. 41, Part 4, at 24-25.)

having previously conducted Tier III hearings and "receiv[ing] training numerous times" (Dkt. No. 43, Part 4, at 18), Defendant Duke failed to call Defendant Caruso, the author of Plaintiff's first misbehavior report, as a witness at Plaintiff's hearing, in violation of the DOCS policy that Tier III hearing officers call the investigating employees as witnesses at the Tier III hearing (Dkt. No. 41, Part 1, at 25 [Selsky Dep. Tr.] ["if a misbehavior report is based on an investigation, . . . testimony from the reporting employee [is desired] to substantiate the nature of the investigation"]); (3) although having previously conducted Tier III hearings, Defendant Cushman failed to allow Plaintiff to call certain witnesses that he had requested, "who might have . . . provided some relevant testimony" (Dkt. No. 41, Part 1, at 57); (4) Defendant Cushman based his decision, in part, on Defendant Miller's perceived feelings that Plaintiff's furlough application was intended to harass her, despite the fact that the application was not addressed to Miller, and was not intended to be viewed by Miller (Dkt. No. 41, Part 2, at 148-53); (5) Defendant Cushman based his decision, in part, on Defendant Miller's belief that Plaintiff's excessive note-taking during a conversation between Plaintiff and Miller constituted harassment, despite the fact that there is "nothing wrong" with taking notes during a conversation (Dkt. No. 41, Part 1, at 58); (6) Defendant Cushman based his decision, in part, on Defendant Miller's feelings that letters that Plaintiff sent to Miller after he returned to Hudson C.F. from Greene C.F. were threatening, despite his belief that the letters were not threatening or intimidating on their face (Dkt. No. 41, Part 2, at 72-73); and (7) both of Plaintiffs disciplinary convictions were overturned and expunged.[6]

---

[6]     *See*, *e.g.*, *Farid v. Goord*, 200 F. Supp.2d 220, 243 (W.D.N.Y. 2002) (denying defendants' motion for summary judgment where hearing officer "denied [plaintiff]'s request to call witnesses . . . whose testimony [plaintiff] considered as critical to the merits of his defense . .

Based on this evidence, the Court concludes that a genuine issue of material fact exists regarding whether Plaintiff's due process rights were violated at his Tier III disciplinary hearings.  In addition, the Court rejects Defendants' qualified immunity argument for the reasons stated by Plaintiff in his memorandum of law submitted in opposition of Defendants' motion for summary judgment.

For this reason, the Court denies Defendants' motion with regard to Plaintiff's due process claims against Defendants Duke and Cushman arising from both of his Tier III disciplinary hearings.

**B.    Equal Protection Claim**

Plaintiff alleges that Defendants violated his equal protection rights by sentencing him to serve time in SHU, which in effect amounted to treating him differently than other similarly situated inmates.

Defendants argue that summary judgment is warranted regarding Plaintiff's equal protection claim because Plaintiff has failed to adduce sufficient record evidence from which a rational fact-finder could conclude that Plaintiff's equal protection rights were violated.  More specifically, Defendants argue that (1) Plaintiff has failed to offer any evidence that he was treated differently than other similarly situated individuals at his disciplinary hearings, or that his treatment at his hearings was the result of intentional or purposeful discrimination, and (2) Plaintiff has not offered any evidence that his disciplinary sentences were not reasonably related to any legitimate penological interests.

---

. [because] [c]alling the officers would not have implicated any safety concerns[, and] [a]ll parties agree that [plaintiff] succeeded in obtaining reversal of the Tier III judgment through an Article 78 proceeding in state court[, which] serves as persuasive authority that [plaintiff]'s due process rights were violated").

"The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law." *Towner v. Lape*, 08-CV-0047, 2009 WL 81221, at *2 n.5 (N.D.N.Y. Jan. 9, 2009) (Hurd, J. adopting Homer, M.J.). "Essential to that protection is the guarantee that similarly situated persons be treated equally." *Lape*, 2009 WL 81221, at *2 n.5 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 [1985]). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.). In other words, "an equal protection claim under § 1983 must allege intentional discrimination on the basis of membership in a protected class." *Harris v. Alves*, 06-CV-5068, 2008 WL 2116407, at *10 (E.D. Wash. May 19, 2008), *cited by Nash v. McGinnis*, 585 F. Supp.2d 455, 462 (W.D.N.Y. 2008). "[P]risoners do not comprise a protected class for Equal Protection purposes." *Fletcher v. Goord*, 07-CV-0707, 2008 WL 4426763, at *11 n.28 (N.D.N.Y. Sept. 25, 2008) (Sharpe, J. adopting Lowe, M.J.); *see also Lape*, 2009 WL 81221, at *2 n.5.

After carefully reviewing the parties' arguments and record evidence on Defendants' motion, the Court finds that Plaintiff has failed to introduce sufficient evidence from which a rational fact-finder could conclude that he suffered intentional discrimination as a result of his membership in a protected class. Instead, at best, Plaintiff has introduced record evidence that suggests only that he was treated more harshly than other inmates as a result of the relationship between Defendant Abitable and Plaintiff.

For this reason, the Court grants Defendants' motion with regard to Plaintiff's equal protection claim.

### C.    Retaliation Claim

As stated in Part I.A. of this Decision and Order, liberally construed, Plaintiff's Amended Complaint states a claim for retaliation.  Defendants failed to address the asserted evidentiary deficiencies in Plaintiff's retaliation claim in their initial papers in support of their motion for summary judgment (but rather addressed this claim for the first time in their reply to Plaintiff's response papers).  (Dkt. No. 40, at 9.)  As a result, whether or not this claim survives summary judgment is properly analyzed under the Fed. R. Civ. P. 12(b)(6) standard articulated in Part II.B. of this Decision and Order.

"In order to state a cause of action for retaliation, a plaintiff must plead facts plausibly suggesting that (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action."  *Excell v. Woods*, 07-CV-0305, 2009 WL 3124424, at *24 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J. adopting Lowe, M.J.) (citing *Davis v. Goord*, 320 F.3d 346, 352 [2d Cir. 2003]) (other citation omitted).

### 1.    Whether Plaintiff's Speech or Conduct Was Protected

In the prison context, the Second Circuit has held that "inmates must be 'permit[ted] free and uninhibited access . . . to both administrative and judicial forums for the purpose of seeking redress of grievances against state officers.'"  *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 [2002] [quoting *Haymes v. Montanye*, 547 F.2d 188, 191 [2d Cir. 1976]).  Here, Plaintiff's Amended Complaint alleges (1) that "[o]n or about July 26, 2004, Plaintiff submitted a formal appeal of Defendant Duke's July 12, 2004 decision", and (2) "[b]etween September 16, 2004 and September 23, 2004, Plaintiff submitted a total of seven grievances against Defendants Totten, Miller, Cushman, and Abitable."

For this reason, the Court finds that Plaintiff has alleged facts plausibly suggesting that he was engaged in protected speech.

### 2.    Whether Defendants Took Adverse Action Against Plaintiff

"[I]n the prison context [the Second Circuit has] previously defined 'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 [2d Cir. 2003]). "This objective test will apply even though a particular plaintiff was not himself deterred." *Murray v. Pataki*, 03-CV-1263, 2009 WL 981217, at *9 (N.D.N.Y. Apr. 9, 2009) (Suddaby, J. adopting Treece, M.J.) (citing *Gill*, 389 F.3d at 381).

Here, Plaintiff's Amended Complaint alleges, *inter alia*, that he was sentenced to SHU on two separate occasions, and that the second time he was sentenced to SHU was "less than forty-eight (48) hours after [his] arrival [at Hudson from Greene, where he was housed in SHU]." His Complaint further alleges, with regard to his second placement in SHU, that he was "once again removed based on another fraudulent misbehavior report written by Defendant Miller who had been harassing and intimidating Plaintiff since his arrival at Hudson."

For this reason, the Court finds that Plaintiff has alleged facts plausibly suggesting that Defendants took adverse action against him.

### 3.    Whether There Was a Casual Connection Between the Protected Speech and the Adverse Action

"A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence." *Murray*, 2009 WL 981217, at *9 (citing *Bennett v. Goord*, 343 F.3d 133, 138-39 [2d Cir. 2003] [holding that plaintiff met his burden in proving

retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded]).  "Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff."  *Murray*, 2009 WL 981217, at *9 (citations omitted).

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001).  "The Second Circuit has, however, found that lapses of time far longer than two or three weeks are sufficient to support a cause of action for retaliation."  *Excell*, 2009 WL 3124424, at *24 (citing *Espinal v. Goord*, 554 F.3d 216, 228 [2d Cir. 2009] [the "passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers . . . is sufficient to support an inference of a causal connection"]; *Gorman-Bakos*, 252 F.3d at 555 [lapse of five months between protected activity and retaliation may show a causal connection]; *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45-46 [2d Cir. 1980] [lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection]).

Here, Plaintiff alleges facts plausibly suggesting the following events.  He "was transferred to the Hudson Industrial Training/Work Release Minimum Security Facility on or about May 10, 2004."  (Dkt. No. 8, at ¶ 38.)  The next day, he "was called to a meeting with Defendants Miller and Abitable at the Work Release/ Industrial Training Building[,] at which

time [he] was threatened and harassed." (*Id*. at ¶ 39.)  "On or about May 11, 2004, [he] sent correspondence to Defendant Miller requesting a memo regarding the statements made by her [during] the May 11, 2004 meeting."  (*Id*. at ¶ 40.)  However, Defendant Miller contacted him "[o]n or about May 13, 2004, . . . at which time she refused to prepare the memo."  (*Id*. ¶ 41.) Subsequently, he was issued a misbehavior report for writing a threatening letter to a "friend," and transferred to Greene C.F., where he was placed in SHU.  (*Id*. at ¶¶ 42-46.)  He appealed the Tier III determination that he be sent to SHU, and successfully had the decision overruled.  (*Id*. at ¶¶ 48-50.)  After he was transferred back to Hudson C.F. from Greene C.F., he "met with Defendant Abitable at which time he was told Defendant Miller would have to approve his Work Release application."  (*Id*. at ¶ 53.)  He requested that he "not [have] to deal with Defendant Miller," but this request was "denied by Defendant Abitable." (*Id*. at ¶ 54.)  Within "forty-eight hours" of being transferred back to Hudson from Greene, and subsequent to his conversation with Defendant Abitable, Defendant Miller, "who had been harassing and  intimidating Plaintiff since his arrival at Hudson," issued him a "fraudulent misbehavior report."  (*Id*. at ¶ 56.)

Based on these factual allegations, the Court finds that is plausible that Defendant Miller's issuance of a misbehavior report was based on a motivation to retaliate against Plaintiff. In particular, in making this finding, the Court relies on (1) the temporal proximity between when Plaintiff returned to Hudson and when Defendant Miller issued him a misbehavior report, (2) Plaintiff's allegation that he requested that he not have to deal with Defendant Miller, and (3) Plaintiff's allegation that Defendant Miller had threatened him both prior to his first stint in SHU, and subsequent to his return from SHU.  Finally, the Court rejects Defendants' qualified immunity argument for the reasons stated by Plaintiff in his opposition memorandum of law.

14

For these reasons, the Court finds that Plaintiff has stated a claim for retaliation against Defendant Miller, and the Court denies Defendants' motion with regard to this claim.

**D.    Conspiracy Claims**

Plaintiff alleges that Defendants conspired to violate his constitutional rights by issuing him false misbehavior reports and by sentencing him to SHU on two separate occasions.

Defendants argue that Plaintiff's conspiracy claim "should be [dismissed] for failure to state a claim." (Dkt. No. 32, Part 24, at 15.)  Defendants argue, in the alternative, that Plaintiff has failed to adduce any record evidence that would demonstrate that Defendants conspired to violate Plaintiff's constitutional rights.  (*Id*.)  Defendants also argue, in the alternative, that, because Plaintiff has failed to introduce any evidence that Defendants were acting outside the scope of employment "regarding any actions involving Plaintiff, the intracorporate conspiracy doctrine should result in dismissal of every conspiracy claim."  (*Id*.)

**1.    Whether Plaintiff's Conspiracy Claim Should Be Dismissed for Reasons Other than the Intracorporate Conspiracy Doctrine**

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) and overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted); *Taylor v. Hansen*, 731 F. Supp. 72, 78 (N.D.N.Y. 1990) (McCurn, J.).  "While conclusory allegations of a § 1983 conspiracy are insufficient, . . . [because] conspiracies are by their very nature secretive operations," a conspiracy may "be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (internal quotation marks and citations omitted).

15

For the sake of much-needed brevity, the Court will assume, for purposes of this Decision and Order, that Plaintiff's Amended Complaint alleges facts plausibly suggesting the existence of a conspiracy between some of the Defendants during the time in question–although the existence of such factual allegations is far from certain.  (*See* Dkt. No. 8.)

Turning to Defendants' alternative argument pursuant to Fed. R. Civ. P. 56, after carefully reviewing the parties' arguments and record evidence on Defendants' motion, the Court finds that Plaintiff has introduced sufficient evidence from which a rational fact-finder could conclude that Defendants Abitable, Totten, Joy, Miller, Caruso, Duke, and Cushman were personally involved in a conspiracy to violate Plaintiff's constitutional rights.  The Court makes this finding based on the facts discussed in Part III.A. of this Decision and Order, and based on the fact that there is record evidence indicating that Defendant Abitable made Defendants Totten, Joy, Miller, Caruso, and Duke aware of his concerns regarding Plaintiff.

However, the Court also finds, based on the record evidence, that Plaintiff has failed to introduce sufficient evidence from which a rational fact-finder could conclude that Defendants Reale,[7] Roy, Selsky, Goord, LeClaire, Gargano, Murphy,[8] and Rivera were personally involved

---

[7]     The Court notes that Plaintiff has not introduced record evidence from which a rational fact-finder could conclude that Defendant Reale conspired to deny Plaintiff his constitutional rights.  In fact, during his deposition, Plaintiff testified that he has "no evidence" that Defendant Reale had anything to do with Defendant Duke running the Tier III hearing. (Dkt. No. 43, Part 1, at 18.)  Moreover, in his Rule 7.1 Response, Plaintiff states that Defendant Reale said nothing during the meeting that Plaintiff had with Defendant Reale, Miller and Abitable.  (Dkt. No. 38 at ¶ 28.)  Finally, Defendant Totten testified that Defendant Reale was present at
Plaintiff's pre-initiation meeting only because it was "standard procedure" for a sergeant to be present at a meeting of this sort.  (Dkt. No. 45, Part 1, at 14-15.)

[8]     The Court also notes that Plaintiff has not introduced any record evidence establishing (or alleged facts plausibly suggesting) that Defendant Murphy, who was assigned, by Defendant Duke, to be Plaintiff's legal assistant at his first Tier III hearing, conspired to deny Plaintiff his constitutional rights.  Even assuming that Defendant Murphy acted improperly as

16

in any conspired to violate Plaintiff's constitutional rights.

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's

conspiracy claims against Defendants Reale, Roy, Selsky, Goord, LeClaire, Gargano, Murphy,

and Rivera; those claims are dismissed with prejudice. However, the Court denies Defendants'

motion with regard to Plaintiff's conspiracy claims against Defendants Abitable, Totten, Joy,

Miller, Caruso, Duke, and Cushman–to the extent Defendants' motion argues that these seven

Defendants were not personally involved in any conspiracy against Plaintiff. To the extent that

Defendants' motion argues they are protected from liability by the intracorporate conspiracy

doctrine, the Court addresses that argument below in Part III.D.2. of this Decision and Order.

> ### 2.     Whether Plaintiff's Conspiracy Claims Should Be Dismissed Pursuant to the Intracorporate Conspiracy Doctrine

"[W]hen individuals pursue personal interests wholly separate and apart from the entity,"

these individuals are no longer acting within the "scope of employment," and are therefore

excepted from the intracorporate conspiracy doctrine. *Medina v. Hunt*, 05-CV-1460, 2008 WL

4426748, at *8 (N.D.N.Y. Sept. 25, 2008) (Hurd, J. adopting Lowe, M.J.).

Here, Plaintiff has introduced the following evidence: (1) Defendant Abitable had

personal issues with Plaintiff and did not want Plaintiff at the Hudson facility; (2) Defendants

Totten, Duke, Joy, Miller, and Caruso were made aware of these issues; (3) Defendants Abitable,

Reale and Miller met with Plaintiff prior to his initiation into the work release program and

informed him, essentially, that they did not want any problems; (4) despite already signing a

"Negative Correspondence" form, whereby Plaintiff agreed to no longer have any contact with

---

Plaintiff's legal assistant by failing to provide Plaintiff with the materials that he requested, according to Plaintiff, Murphy provided the materials that "Duke said [he] . . . [could] have." (Dkt. No. 43, Part 3, at 47.)  In addition, according to Plaintiff, his problem with Defendant Murphy was that he was "incompetent."  (*Id*. at 45-46.)

Sidney Richter, an individual (and alleged former friend of Plaintiff's) whom Plaintiff wrote letters to while Plaintiff was incarcerated, Defendant Abitable asked Defendant Caruso to investigate the situation between Plaintiff and Mr. Richter; (5) Defendant Caruso subsequently issued Plaintiff a misbehavior report based on his finding that the letters were threatening and/or intended to harass Mr. Richter.

As a result, the Court finds that Plaintiff has introduced sufficient evidence from which a rational fact-finder could conclude that Defendants Totten, Duke, Joy, Miller, Caruso, and Abitable were pursuing personal interests wholly separate and apart from those of DOCS and the State of New York. *See Hill v. City of New York*, 03-CV-1283, 2005 WL 3591719, at *6 (S.D.N.Y. Dec. 30, 2005) ("Here, plaintiff clearly alleges that defendant Barrett acted in his own personal interest, not in the interest of the police department or the city, by conspiring with others to cover-up his alleged use of excessive force. Given that plaintiff has alleged that Barrett conspired based on a personal stake, the intracorporate conspiracy doctrine is inapplicable to the instant case.").

However, the Court finds that Plaintiff has failed to introduce any evidence that Defendant Cushman was pursuing interests wholly separate and apart from those of DOCS and the State of New York. In particular, Plaintiff has failed to introduce any evidence from which a rational fact-finder could conclude that Defendant Cushman was aware of Defendant Abitable's concerns with Plaintiff; in fact, Defendant Cushman's deposition testimony reveals that Defendant Cushman was "not aware of" Defendant Abitable's relationship with Plaintiff. (Dkt. No. 41, Part 2, at 128-29.)

For this reason, the Court dismisses Plaintiff's conspiracy claims against Defendant Cushman with prejudice pursuant to the intracorporate conspiracy doctrine. The Court also

18

relies on the intracorporate conspiracy doctrine as an alternative ground on which to dismiss Plaintiff's conspiracy claims against Defendants Reale, Roy, Selsky, Goord, LeClaire, Gargano, Murphy, and Rivera.  Finally, the Court denies Defendants' motion to the extent it requests the dismissal of Plaintiff's conspiracy claims against the remaining individual Defendants (i.e., Abitable, Totten, Joy, Miller, Caruso, and Duke) based on the inracorporate conspiracy doctrine.

### E.    Claims Against DOCS and the New York State Division of Parole

With regard to Plaintiff's claims against the DOCS and New York State Division of Parole, Defendants argue that these claims are barred by the Eleventh Amendment.  As an initial matter, the Court notes that, in his opposition memorandum of law, Plaintiff failed to respond to Defendants' argument that Plaintiff's claims against DOCS and the New York State should be dismissed pursuant to the Eleventh Amendment.  As a result, Defendants' burden with regard to the dismissal of these claims is lightened such that, in order to succeed on this request, Defendants need show only that their request has facial merit.[9]  Based on their motion papers, the Court finds that Defendants have met this lightened burden.  In any event, the Court finds that Defendants' argument would survive the heightened scrutiny appropriate on a contested motion for the reasons stated in Defendants' memorandum of law.  (*See* Dkt. No. 32, Part 24, at 21.)

---

[9]    *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's claims against DOCS and the New York State, and dismisses those claims pursuant to the Eleventh Amendment.

### F.    Supervisory Liability Claims

In his Amended Complaint, Plaintiff asserts claims of supervisory liability against Defendants Totten, Rivera , Selsky, Leclaire, Goord and Roy based on their alleged failure to supervise Defendants Defendants Miller, Cushman, Murphy, Reale, Duke, Joy and Abitable.

Defendants argue that Plaintiff's supervisory liability claims must be dismissed because (1) pursuant to *Monell v. v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), a claim sounding in *respondeat superior* cannot lie, and (2) Plaintiff has failed to state a claim upon which relief may be granted.  In the alternative, Defendants argue that Plaintiff has failed to introduce evidence demonstrating the requisite personal involvement of Defendants Totten, Rivera , Selsky, Leclaire, Goord and Roy.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Excell v. Woods*, 07-CV-0305, 2009 WL 3124424, at *20 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.) [citations and internal quotation marks omitted].  "In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant." *Excell*, 2009 WL 3124424, at *20 [citation omitted].  "If the defendant is a supervisory official, such as a [deputy superintendent of a prison], a mere 'linkage' to the unlawful conduct through 'the prison chain of command' (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct." *Id*. [citations omitted].  "In other words, supervisory officials may not be held liable merely because

they held a position of authority." *Id.* [citation omitted]. "Rather, supervisory personnel may be considered 'personally involved' only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring." *Id.* [citations omitted].

"An allegation that an official ignored a prisoner's letter of protest or request for investigation is insufficient to establish personal involvement." *Alexander v. Whitney*, 04-CV-1298, 2008 WL 904897, at *5 (N.D.N.Y. Mar. 31, 2008) (Kahn, J. adopting DiBianco, M.J.) [citation omitted]). Moreover, "[w]here a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action." *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp.2d 342, 347 (W.D.N.Y. 2007) [internal quotation marks and citations omitted].[10] Stated another way, a supervisor is entitled to "rely on [his or her] subordinate to conduct an appropriate investigation and response." *Vega v. Artus*, 610 F. Supp.2d 185, 199 (N.D.N.Y. 2009) (Suddaby, J.).[11]

---

[10]     *See also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (affirming district court's grant of summary judgment where DOCS commissioner referred plaintiff's letter to prison superintendent for decision); *accord*, *Garvin v. Goord*, 212 F. Supp.2d 123, 126 (W.D.N.Y. 2002) ("[W]here a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a § 1983 cause of action.").

[11]     *Accord*, *Brown v. Goord,* 04-CV-0785, 2007 WL 607396, at *6 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J., on *de novo* review) ("If . . . Plaintiff is referring to Defendant Goord's policy of delegating to high-ranking

### 1.    Defendants Goord, LeClaire, Selsky, Rivera, and Roy

Again, for the sake of much-needed brevity, the Court will assume, for purposes of this Decision and Order, that Plaintiff's Amended Complaint alleges facts plausibly suggesting that Defendants Goord, LeClaire, Selsky, Roy, and Rivera directly participated in any constitutional violation, created, or allowed to continue, a policy or custom under which the violation occurred, or were grossly negligent in managing subordinates who caused the violation–although the existence of such factual allegations is far from certain.  (*See* Dkt. No. 8.)

Turning to Defendants' alternative argument pursuant to Fed. R. Civ. P. 56, after carefully reviewing the parties' arguments and record evidence on Defendants' motion, the Court finds that, even assuming that Defendants Goord, LeClaire, Selsky, Rivera, and Roy, as supervisory officials, were made aware of the conduct of Defendants Duke, Joy, Miller, Caruso, Reale, Abitable, and Cushman, no record evidence exists from which a rational fact-finder could conclude that any of them either failed to remedy a constitutional violation that Plaintiff suffered after learning of it through a report or appeal, or exhibited deliberate indifference to the rights of Plaintiff by failing to act on information indicating that the violation was occurring.  The Court

---

subordinates the responsibility to read and respond to, complaints by prisoners, then Plaintiff is mistaken that such a policy renders Defendant Goord personally involved in the constitutional violations of which the prisoners complain.") [citations omitted]; *Swindell v. Supple*, 02-CV-3182, 2005 WL 267725, at *10 (S.D.N.Y. Feb. 3, 2005) ("[A]ny referral by Goord of letters received from [plaintiff] to a representative who, in turn, responded, without more, does not establish personal involvement."); *Farid v. Goord*, 200 F. Supp.2d 220, 235 (W.D.N.Y. 2002) (dismissing action against DOCS commissioner and prison superintendent for lack of personal involvement where plaintiff merely sent petition to them and each referred the petition down the chain of command for investigation); *cf. Poe v. Leonard*, 282 F.3d 123, 144 (2d Cir. 2002) ("Supervisors cannot be expected to reinvent the wheel with every decision, for that is administratively unfeasible; rather, they are entitled to rely upon the decisions of their predecessors or subordinates so long as those decisions do not appear to be obviously invalid, illegal or otherwise inadequate.").

makes this finding for the following reasons: (1) Defendant Selsky overruled both Tier III

rulings, and expunged Plaintiff's record; (2) Defendant Rivera thoroughly investigated Plaintiff's

grievances; (3) Defendants LeClaire and Goord were in no way responsible for Plaintiff's

treatment while confined in SHU, and Defendant LeClaire in fact referred Plaintiff's sister to the

appropriate individuals/agencies to contact regarding Plaintiff's treatment; and (4) any error in

Plaintiff's merit release status was rectified in a timely manner.

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's

supervisory liability claims against Defendants Goord, LeClaire, Selsky, Roy and Rivera, and

dismisses those claims with prejudice.

### 2.    Defendant Totten

As stated in Parts III.A. and III.D.1. of this Decision and Order, Plaintiff has introduced

sufficient record evidence from which a rational fact-finder could conclude that Defendant

Totten was aware of Defendant Abitable's concerns regarding Plaintiff based on the relationship

between Defendant Abitable's brother's and Plaintiff.  In addition, the Court notes that Plaintiff

has introduced record evidence of the following facts: (1) after being made aware of Defendant

Abitable's concerns regarding Plaintiff, Defendant Totten received a letter, originally given to

Lieutenant Klein from Sidney Richter, which Defendant Totten perceived to be threatening (Dkt.

No. 45, Part 1, at 19-30); (2) the letter discusses, among other things, a property dispute between

Mr. Richter and Plaintiff (Dkt. No. 45, Part 1, at 38-41); (3) Defendant Totten met with Plaintiff

concerning the letter, and informed him that "there was going to be a negative correspondence

on him" (Dkt. No. 45, Part 1, at 41); (4) according to Plaintiff, Defendant Totten stated to

Plaintiff "if this happens again I'm going to send you to Greene because I own your ass now"

(Dkt. No. 43, Part 1, at 8) (4) the negative correspondence letter states, essentially, that an

23

inmate will be subject to disciplinary action if he attempts to contact the individual identified on

the negative correspondence form in the future (Dkt. No. 45, Part 1, at 43-44); (5) Defendant

Totten subsequently signed a misbehavior report, issued by Defendant Caruso, issued as a result

of Plaintiff sending letters to Mr. Richter (Dkt. No. 45, Part 1, at 59-60); (6) Defendant Totten

appointed Defendant Duke as the Tier III hearing officer for Plaintiff's first misbehavior report

(Dkt. No. 44, Part 4, at 44); and (7) "[o]n several occasions during [Plaintiff's first Tier III]

hearing or in between the hearing . . . [Defendant Duke] went to [Defendant Totten's] office."

(Dkt. No. 43, Part 1, at 18-20.)

Based on this evidence, the Court concludes that a rational fact-finder could conclude

that Defendant Totten directly participated in a constitutional violation, failed to remedy a

constitutional violation that Plaintiff suffered after learning of it through a report or appeal, or

was grossly negligent in managing subordinates who caused the violation.

For this reason, the Court denies Defendants' motion with regard to Plaintiff's

supervisory liability claim against Defendant Totten.

### G.    Claims of Malicious Prosecution and Abuse of Process

As an initial matter, the Court notes that, in his opposition memorandum of law, Plaintiff

failed to respond to Defendants' argument that Plaintiff's claims of malicious prosecution and

abuse of process should be dismissed for failure to state a claim.  As a result, Defendants' burden

with regard to the dismissal of this claim is lightened.  *See, supra,* Part III.D.3. of this Decision

and Order.  Based on their motion papers, the Court finds that Defendants have met this

lightened burden.  In any event, the Court finds that Defendants' argument would survive the

heightened scrutiny appropriate on a contested motion for the reasons stated in Defendants'

memorandum of law.  (*See* Dkt. No. 32, Part 24, at 21.)

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's claims of malicious prosecution and abuse of process, and dismisses those claims without prejudice.

### H.    Claim of Intentional Infliction of Emotional Distress

"To state a claim for [intentional infliction of emotional distress] under New York law, [a] plaintiff must plead the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal relationship between the conduct and the resulting injury; and (4) severe emotional distress." *Davey v. Jones*, 06-CV-4206, 2007 WL 1378428, at *3 (S.D.N.Y.2007) (citing *Bender v. City of New York*, 78 F.3d 787, 790 [2d Cir. 1996]).

"Under the Prisoner Litigation Reform Act ('PLRA'), a confined prisoner claiming intentional infliction of emotional distress must have suffered actual physical injury as a result of defendants' actions; although the injury need not be significant it must be more than *de minimis*." *Romer v. Morgenthau*, 119 F. Supp.2d 346, 364 (S.D.N.Y. 2000) (citations omitted). "New York State law requires intentional infliction of emotional distress for extreme and outrageous conduct intentionally or recklessly causing severe emotional distress to another . . . [; the] conduct must be outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." *Morgenthau*, 119 F. Supp.2d at 364 (citation omitted).

After carefully reviewing the parties' arguments and record evidence on Defendants' motion, the Court finds that Plaintiff has failed to introduce sufficient evidence from which a rational fact-finder could conclude that Defendants at Hudson exhibited extreme and outrageous conduct intended to inflict emotional distress on Plaintiff.  The record demonstrates that the only physical injury that Plaintiff suffered is that he lost roughly forty pounds during his confinement in SHU as a result of his inability to consume meat, due to a stomach ailment.  Even assuming

that the loss of forty pounds is more than a *de minimis* injury, Plaintiff has failed to introduce evidence that Defendants at Hudson C.F., who were responsible for Plaintiff's confinement in SHU, were aware of Plaintiff's digestive problems.  In addition, although the Tier III hearings were both overruled because of procedural improprieties, Plaintiff has failed to introduce evidence from which a rational fact-finder could conclude that the issuance of the misbehavior reports constituted extreme and outrageous conduct.

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's claim of intentional infliction of emotional distress, and dismisses this claim with prejudice.

## I.        Eighth Amendment Claim

As stated above in Part I.A. of this Decision and Order, liberally construed, Plaintiff's Amended Complaint asserts a claim for violation of his Eighth Amendment rights in that Plaintiff experienced "weight loss and weakness" during his 106-day confinement in SHU because he had a stomach "condition" that was adversely impacted by his commissary restrictions and eating restrictions (i.e., handcuffing during eating).  *See*, *supra*, note 2 of this Decision and Order.  However, Defendants failed to address Plaintiff's Eighth Amendment claim in their motion for summary judgment (or in their reply to Plaintiff's response papers).  As a result, whether or not this claim survives summary judgment is properly analyzed under the Fed. R. Civ. P. 12(b)(6) standard articulated in Part II.B. of this Decision and Order.

Plaintiff's Eight Amendment claim may be liberally construed as asserting that (1) he was subjected to inadequate prison conditions, and/or (2) Defendants were deliberately indifferent to a serious medical need.  Under either theory of liability, two requirements must be met to state a claim.  First, a plaintiff must allege facts plausibly suggesting that the deprivation was, objectively, "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Second,

a plaintiff must allege facts plausibly suggesting that the defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

For the sake of argument, the Court will assume that Plaintiff has satisfied the *sufficient seriousness* requirement discussed above by vaguely alleging that he experienced "weight loss and weakness" because his stomach "condition" was adversely impacted by his commissary and eating restrictions. This Court notes that this assumption is generous, given the nature of what the Eighth Amendment requires in terms of prison diets. *See Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *8 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J. adopting Treece, M.J.) ("[T]he Eighth Amendment requires that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'") (citing, *inter alia*, *Robles v. Coughlin*, 725 F.2d 12, 15 [2d Cir. 1983]).

In any event, even assuming that Plaintiff has satisfied the *sufficient seriousness* requirement discussed above, he has failed to satisfy the *sufficiently cuplable state of mind* requirement discussed above. More specifically, he has failed to allege facts plausibly suggesting that, during the time in question, any Defendant knew of his stomach "condition," or recklessly imposed commissary or eating restrictions on him. The Court notes that negligence is not enough to impose liability under the Eighth Amendment.[12] Deliberate indifference is a state

---

[12]     *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical

of mind akin to *criminal recklessness*.[13]

Finally, the Court notes that, to the extent that Plaintiff is attempting to claim that the harsh conditions of confinement he experienced for 106 days in SHU violated the Fourteenth Amendment (under *Sandin v. Connor*, 515 U.S. 472 [1995]), the Court finds that (1) such a claim, as asserted, more properly arises under the Eighth Amendment, and (2) in any event, Plaintiff has not alleged facts plausibly suggesting a violation of the Fourteenth Amendment.[14]

--------

staff, requires more than negligence. . . .  Disagreement with prescribed treatment does not rise to the level of a constitutional claim. . . .  Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate. . . .  Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

[13]    *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted].

[14]    The Court notes that numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of more than the 106 days in question.  *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr. 17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord*, *Husbands v. McClellan*, 990 F. Supp. 214, 217-19 (W.D.N.Y. 1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin*, 985 F. Supp. 350, 353-56 (W.D.N.Y. 1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky*, 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y. 1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin*, 949 F. Supp. 112, 116-17 (N.D.N.Y. 1996) (Smith, M.J.) (180

For these reasons, the Court grants Defendants' motion with regard to Plaintiff's Eighth Amendment claim, and dismisses this claim without prejudice.

**ACCORDINGLY** it is

**ORDERED** that Defendants' motion for summary judgment is **<u>GRANTED</u>** with regard to the following claims, which are dismissed **with prejudice**:

1.      Plaintiff's equal protection claim;

2.      Plaintiff's conspiracy claims against Defendants Gargano, Cushman, Murphy, Reale, Goord, LeClaire, Rivera, Roy, Selsky, the DOCS and New York State Division of Parole;

3.      Plaintiff's supervisory liability claims against Defendants Goord, LeClaire, Rivera, Roy, and Selsky; and

4.      Plaintiff's claim of intentional infliction of emotional distress; and it is further

**ORDERED** that Defendants' motion for summary judgment is **<u>GRANTED</u>** with regard to the following claims, which are dismissed **without prejudice**:

1.      Plaintiff's due process claims relating to (a) the delay that occurred between the time he was eligible for release from DOCS and the time that he was actually released, and (b) the denial of work release;

2.      Plaintiff's claims of malicious prosecution and abuse of process; and

3.      Plaintiff's Eighth Amendment claim; and it is further

---

days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin*, 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug. 27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero*, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

**ORDERED** that Defendants' motion for summary judgment is **DENIED** with regard to the following claims, which remain pending in this action:

1.    Plaintiff's due process claims against Defendants Duke and Cushman;

2.    Plaintiff's retaliation claim against Defendant Miller;

3.    Plaintiff's conspiracy claims against Defendants Abitable, Totten, Joy, Miller, Caruso, and Duke; and

4.    Plaintiff's supervisory liability claim against Defendant Totten; and it is further

**ORDERED** that, as a result of the foregoing, Plaintiff's claims against Defendants Gargano, Reale, Goord, LeClaire, Rivera, Selsky, Roy, Murphy, DOCS, and the New York State Division of Parole are **DISMISSED**; and it is further

**ORDERED** that counsel shall appear on **JANUARY 5, 2010 at 2:00 PM** in chambers for a pretrial conference in this action with the undersigned, at which counsel shall appear with settlement authority.  In the event that this case does not settle, trial will be scheduled at that time.

Dated: December 16, 2009
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge