UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH MELINO,

                    Plaintiff,

v.                                        9:06-CV-1173
                                        (GTS/DRH)

PAULETTE MILLER; PAUL CUSHMAN;
FRANCIS CARUSO; LOYCE DUKE;
WILLIAM TOTTEN; DEBRA JOY;
and PHILIP ABITABLE,

                    Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

LAW OFFICE OF ANTHONY J. COLLELUORI        ANTHONY J. COLLELUORI, ESQ.
   Counsel for Plaintiff                                          DIANE C. PETILLO, ESQ.
180 Froehlich Farm Boulevard
Woodbury, NY 11797

HON. ANDREW M. CUOMO                            CHRISTOPHER W. HALL, ESQ.
   Attorney General for the State of New York      Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224-0341

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Joseph Melino ("Plaintiff") has filed the current prisoner civil rights action against seven (7) employees of the New York State Department of Correctional Services at Hudson Correctional Facility: Paulette Miller, Paul Cushman, Francis Caruso, Loyce Duke, William Totten, Debra Joy, and Phillip Abitable ("Defendants"). (Dkt. No. 1.) Currently pending before the Court are two of Plaintiff's pretrial motions *in limine*. (Dkt. Nos. 73, 78.) For the reasons set forth below, Plaintiff's motions are denied.

**I.     RELEVANT BACKGROUND**

Familiarity with the relevant factual allegations giving rise to Plaintiff's claims, and the procedural history of this action, is assumed in this Decision and Order, which is intended primarily for the review of the parties.  As a result, the Court will refer to this action's factual allegations and/or procedural history in the Court's analysis of the current motion only when necessary.

**II.    PLAINTIFF'S MOTIONS *IN LIMINE***

Plaintiff has filed the following two motions *in limine*: (1) a motion to permit Plaintiff's psychotherapist, Dr. Thomas A. Qualtere, to testify as an expert witness on the issue of Plaintiff's Post-Traumatic Stress Disorder; and (2) a motion to preclude the introduction of evidence related to all of his prior criminal convictions pursuant to Fed. R. Evid. 609 and 403. (Dkt. Nos. 73, 78.)

**A.     Motion to Permit Testimony of Expert Witness**

Generally, in support of his motion to permit his psychotherapist to testify as an expert witness, Plaintiff argues as follows: (1) the "testimony is essential to prove the depth of emotional damage suffered by [him] as a result of Defendants' actions"; (2) as his treating physician for roughly two months, his expert is "highly qualified . . . to testify about the proposed issue of [his post traumatic stress disorder]"; (3) "Dr. Qualtere has regularly been found to be an expert in all of the courts of the State of New York and elsewhere and regularly testifies for the New York State Attorney General's office as an expert in Prison Rights and other cases"; and (4) "[t]he introduction of Dr. Qualtere's testimony will not be prejudicial to Defendants because in his testimony Dr. Qualtere will not address any legal conclusions." (Dkt. No. 73.)

In response, Defendants argue as follows: (1) because Plaintiff has failed to show good cause for his failure to comply with Fed. R. Civ. P. 26 and the Court's Scheduling Order of May 8, 2007 (Dkt. No. 20), the testimony in question is inadmissible; (2) even if the Court were to excuse Plaintiff's failure to timely identify this witness, the testimony is irrelevant, and therefore inadmissible, because "the Court has already ruled th[at] [D]efendants' are not liable for [P]laintiff's alleged suffering in SHU and at Hudson Correctional Facility"; and (3) if the Court is inclined to grant the motion, Defendants' trial should be adjourned and discovery reopened. (Dkt. No. 86.)

### B. Motion to Preclude Introduction of Prior Criminal Convictions

Generally, in support of his motion to preclude Defendants from introducing evidence of his prior criminal convictions, Plaintiff argues that evidence of his prior criminal convictions should be excluded, for the purpose of attacking his character for truthfulness, for the following reasons: (1) certain of those convictions do not involve "an act of dishonesty or false statement" pursuant to Fed. R. Evid. 609(a)(2); (2) the convictions that involve "an act of dishonesty or false statement" are more than 10 years old, and are therefore inadmissible pursuant to Fed. R. Evid. 609(b); and (3) the probative value of admitting any of his criminal convictions does not substantially outweigh its prejudicial effect pursuant to Fed. R. Evid. 403, 609(a)(1), and 609(b). (Dkt. No. 78.)

Generally, in opposition to Plaintiff's motion, Defendants argue as follows: (1) Plaintiff's 2003 convictions for grand larceny and petit larceny are admissible because these crimes "by [their] nature, [are] probative of a lack of veracity"; and (2) because Plaintiff's 1991 and 1992 convictions involved "an act of dishonesty or false statement" pursuant to Fed. R. Evid. 609(a)(2), "exceptional circumstances" allow for the admission of these convictions.[1]

---

[1] The Court notes that Plaintiff's federal criminal convictions occurred in 1991 and 1992, but Plaintiff was released from prison in 1993. (Dkt. No. 71.)

3

**III.    ANALYSIS**

    **A.    Whether Plaintiff's Psychotherapist Should be Permitted to Testify as an Expert Witness**

On May 8, 2007, more than three years ago, the Court issued the Pretrial Scheduling Order in this case. (Dkt. No. 20.) In that Order, the Court directed, *inter alia*, that "[n]o later than 90 days prior to the discovery deadline set in paragraph 6 above, plaintiff(s) shall identify . . . expert(s) and unless waived shall serve on the other parties the expert's written report pursuant to Fed. R. Civ. P. 26(a)(2)(B)." (*Id*.) The Order further directed that, "[i]f a treating physician is expected to be called as a witness, he or she must be identified at least 90 days prior to the close of discovery." (*Id*. at ¶ 6 [a][5].) Through subsequent orders, the deadline for all discovery in this case was extended to December 20, 2008, more than a year and a half ago. (Dkt. Nos. 25, 27, 31.) Nonetheless, Plaintiff did not provide the identity of his expert witness, or even indicate that he intended to call an expert witness, until July 23, 2010–one year and seven months after the expiration of that deadline, and only twenty-four (24) days before trial (when he filed his motion *in limine*).

Under the circumstances, the Court finds that Plaintiff has failed to comply with Fed. R. Civ. P. 26(a)(2)(C) and the Court's Scheduling Orders. Four factors are considered in determining whether to preclude testimony for failure to comply with a discovery order: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. and Sci. Commc'ns, Inc*., 118 F.3d 955, 961 (2d Cir. 1997), *cert. denied*, 523 U.S. 1020 (1998); *see also Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988).

With regard to the first factor, Plaintiff's explanation for his failure to comply with the discovery order is that "[i]t took [him a] long time to find a psychotherapist he was comfortable to work with[,]" which Plaintiff states is "not abnormal" for someone with his condition. (Dkt. No. 73.) The incidents giving rise to this lawsuit occurred between May and October of 2004, roughly six years ago. Moreover, Plaintiff commenced this action on October 2, 2006, roughly four years ago. The initial Scheduling Order required that discovery be completed by April 1, 2008. (Dkt. No. 20.) This deadline was subsequently extended four separate times, such that expert disclosures were due, at the very latest, by December 20, 2008.[2] As a result, Plaintiff had more than two years from the commencement of the action to locate and disclose an expert. However, he failed to do so. Furthermore, he has failed to provide an affidavit explaining his efforts to locate an expert during this time, and why these efforts were unsuccessful. In addition, it does not appear that Defendant was ever put on notice that Plaintiff was in search of an expert; and Plaintiff never once requested an extension of the discovery deadlines due to his inability to locate one. For each of these reasons, the Court finds that this factor favors preclusion.

With regard to the second factor, the Court finds that, although Plaintiff would be denied the opportunity to call Dr. Qualtere (if his motion were denied), he would not be denied the opportunity to present other evidence to assist the trier or fact in determining damages. Moreover, this is not a medical malpractice action (or other similarly complicated action) where expert testimony is usually required to assist the trier of fact.[3] Rather, this is a prisoner civil

---

[2] The Court recognizes that the final extension applied only to the taking of depositions. However, the Court liberally construes its own Order as permitting expert disclosure up until December 20, 2008, to emphasize the extreme nature of Plaintiff's delay.

[3] The Court notes also that Plaintiff was prepared to go to trial without an expert witness when trial was originally scheduled to begin on May 24, 2010. (*See* Dkt. No. 66 [Plaintiff's Witness List, which fails to identify any expert witnesses].)

5

rights action arising out of claims of retaliation and denial of due process. As a result, the Court finds that, to the extent that this factor favors Plaintiff, it does so only slightly. *See Episale v. Peabody*, 01-CV-0370, 2002 WL 34453291, at *2 (N.D.N.Y. Oct. 24, 2002) (McAvoy, J.).

With regard to the third factor, the Court finds that Defendants would be unfairly prejudiced (if Plaintiff's motion were granted) because (1) they would not have sufficient time to investigate Dr. Qualtere before trial, (2) they would not have sufficient time to properly depose Dr. Qualtere before trial, and (3) they would not have ample opportunity to obtain their own expert to rebut Dr. Qualtere. *See Episale*, 2002 WL 34453291, at *2 (noting that "Defendant would be seriously prejudiced if Dr. Al-Khalidi is permitted to testify and defendant does not have the opportunity to thoroughly examine Dr. Al-Khalidi's findings and opinions and obtain her own evaluation of plaintiff's injuries in light of Dr. Al-Khalidi's conclusions[, and] Defendant likely would require substantial time and would incur significant expense in preparing to meet Dr. Al-Khalidi's testimony"). As a result, the Court finds that this factor strongly favors preclusion.

Finally, with regard to the fourth factor, the Court finds that Plaintiff has been aware that this case was set for trial (originally on May 24, 2010) since March 16, 2010.[4] However, at no time since then has Plaintiff indicated that he needed additional time to locate an expert or that the trial should be postponed. Moreover, as already discussed, permitting a continuance at this point likely would require a significant amount of time.[5] "When trial courts permit deadline

---

[4] On February 2, 2010, the Court issued a Trial Order setting trial for May 24, 2010. (Dkt. No. 49.) On March 16, 2010, the Court issued a Decision and Order denying Defendants' motion for reconsideration. (Dkt. No. 53.)

[5] As discussed above, Defendants would require substantial time to properly investigate and depose Dr. Qualtere, locate their own expert, have their own expert examine Plaintiff and prepare a report, after which Plaintiff likely would want to depose Defendants' expert.

slippage of this sort, trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds." *Softel, Inc.*, 118 F.3d at 962-63.  As a result, the Court finds that this factor also favors preclusion.  *See Episale*, 2002 WL 34453291, at *2.

For these reasons, the Court precludes Plaintiff's expert from testifying.  *See Episale*, 2002 WL 34453291, at *2 ("Although preclusion is a drastic remedy, . . . it is warranted where. . . plaintiff waited until the proverbial eleventh hour before trial to designate an expert[, which] . . . prejudiced defendant because it left defendant with insufficient time prior to trial to investigate Dr. Al-Khalidi, depose him, and obtain its own expert witness to counter Dr. Al-Khalidi's conclusions.").

> **B.** **Whether Defendants Should be Precluded from Introducing Plaintiff's Prior Criminal Convictions**

Rule 609 of the Federal Rules of Evidence provides as follows, in pertinent part:

> **(a) General rule.–**For the purpose of attacking the character for truthfulness of a witness,
>
> > **(1)** . . . evidence that an accused has been convicted of . . . a crime [punishable by death or imprisonment in excess of one year under the law] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused [pursuant to Rule 403]; and
> >
> > **(2)** evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.
>
> **(b) Time limit.**  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

Fed. R. Evid. 609 [emphasis in original].

1.      **Plaintiff's 1991 and 1992 Criminal Convictions**

In December of 1991, Plaintiff was convicted of committing perjury in violation of 18 U.S.C. § 1623, and transporting stolen property in violation of 18 U.S.C. § 2314.  In September of 1992, Plaintiff was convicted of committing bank fraud in violation of 18 U.S.C. § 1344.

It is undisputed that Plaintiff was released from the confinement imposed by these convictions more than ten years ago.  As a result, evidence of these convictions is inadmissible unless the probative value of these convictions supported by specific facts and circumstances substantially outweighs the prejudicial effect.

"Courts have admitted old convictions into evidence when the conviction is in the nature of *crimen falsi* and the credibility of the witness is of great import to the issues of the case." *Sanders v. Ritz-Carlton Hotel Co., LLC*, 05-CV-6385, 2008 WL 4155635, at *5 (S.D.N.Y. Sept. 9, 2008).  For example, in *Zinman v. Black & Decker, Inc.*, 983 F.2d 431 (2d Cir. 1993), where the plaintiff was previously convicted of Medicare fraud, including making false statements to a government agency, "[t]he [district] court determined that making false statements to a government agency [wa]s akin to perjury and therefore bore heavily on Zinman's credibility." *Sanders*, 2008 WL 4155635, at *5 (citing *Zinman*, 983 F.2d at 434).  "The [district] court further held that Zinman's credibility was highly relevant to several disputed issues in the case, including whether Zinman's injuries made it impossible for him to continue in his profession, whether Zinman discontinued his work solely because of his injuries, and whether Zinman would have continued to work until age 70 but for his injuries." *Sanders,* 2008 WL 4155635, at *5 (citing *Zinman*, 983 F.2d at 434).  As a result, the district court permitted the defendants to introduce evidence of the plaintiff's seventeen-year-old conviction for Medicare fraud. *Zinman*, 983 F.2d at 434 (affirming district court's finding that any prejudice was substantially

outweighed by the probative value of the evidence, and holding that the conviction was properly admitted).[6]

Here, Plaintiff's credibility is of great import to many issues of the case, including Defendants' alleged motive to conspire against him, Defendant Miller's alleged motive to issue him a retaliatory misbehavior report, and the treatment he received at his two tier-three disciplinary hearings.  Moreover, convictions for bank fraud, perjury and transporting stolen property are "in the nature of *crimen falsi*."  See *Zinman*, 983 F.2d at 434; *Sanders*, 2008 WL 4155635, at *5; *Jones v. City of New York*, 98-CV-6493, 2002 WL 207008, at *2 (S.D.N.Y. Feb. 11, 2002) (noting that "the Second Circuit ha[s] held that convictions for burglary or possession of stolen property is appropriate to evaluate a witness' truthfulness").  As a result, the Court will permit Defendants to introduce evidence that Plaintiff has prior convictions for bank fraud, perjury, and transporting stolen property.  However, defense counsel will be limited to eliciting the nature of the crime, the date of conviction, and the sentence.  Extrinsic evidence will not be allowed.

      **2.**    **Plaintiff's 2003 Criminal Convictions**

Plaintiff was convicted in 2003 for grand larceny third degree and fourth degree for his role in diverting funds paid in trust to Regency Construction, LLC.  See *People v. Melino*, 52 A.D.3d 1054 (N.Y. App. Div., 3d Dept. 2008).  A number of courts have held that stealing is sufficiently related to veracity.  See *United States v. Brown,* 606 F. Supp.2d 306, 311-12 (E.D.N.Y. 2009); *Williams v. McCarthy*, 05-CV-10230, 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007); *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc*., 01-CV-3796,

---

[6] See also *Sanders*, 2008 WL 4155635, at *5 (admitting twenty-one year old conviction for tax evasion).

2005 WL 1026515, at *8-9 (S.D.N.Y. May 2, 2005) ("Staten Island did not argue that CCC's crime was a *crimen falsi*, though it bears the burden to so demonstrate.  However, the Court finds that CCC's crime clearly involved an element of falsification bearing on Magaro's propensity to testify truthfully.  The Information states that the grand larceny conviction was based on 'high managerial agents' making 'false representations' to Medicaid to secure payment for health services."); *United States v. Payton*, 159 F.3d 49, 57 (2d Cir. 1998) (affirming district court's determination that a larceny conviction based on false statements to receive food stamps fell under Fed. R. Evid. 609[a][2]).

As an initial matter, the Court finds that, under the circumstances, Plaintiff's grand larceny conviction is highly probative of his character for truthfulness.  The Court also finds that the probative value is increased by the fact that the conviction occurred less than two years before the events giving rise to the current action.  In addition, for the reasons stated above in Part III.B.1. of this Decision and Order, Plaintiff's credibility will be especially important in this case.  For these reasons, the Court concludes that, although this impeachment evidence is certainly prejudicial (as all impeachment evidence is), the probative value of admitting this evidence outweighs its prejudicial effect.  As a result, the Court will permit Defendants to introduce evidence that Plaintiff has prior convictions for grand larceny in the third and fourth degrees.  However, defense counsel will be limited to eliciting the nature of the crime, the date of conviction, and the sentence.  Extrinsic evidence will not be allowed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion *in limine* seeking to admit the testimony of Dr. Qualtere (Dkt. No. 73) is **DENIED**; and it is further:

**ORDERED** that Plaintiff's motion *in limine* seeking to preclude Defendants from introducing evidence of his prior criminal convictions (Dkt. No. 78) is **DENIED**.

Dated: August 5, 2010
       Syracuse, New York

                            Hon. Glenn T. Suddaby
                            U.S. District Judge